BECHAUD, Respondent, vs. TAX COMMISSION and another, Appellants.

*January 18—June 4, 1940.*

24

For the appellants there were briefs by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

For the respondent there was a brief by *Tibbs & Tibbs* of Milwaukee, and oral argument by *Brooke Tibbs.*

The following opinion was filed March 12, 1940:

MARTIN, J. On April 30, 1932, respondent filed a return of his 1931 income. This return showed a total gross income of $26,546.38. It showed total deductions of $34,857.67, including losses on the sale of stocks and bonds. He stated his occupation was "Cereal Beverage Manufacturer." On July 15, 1932, respondent filed an amended return of his income for 1931 in which he stated that his occupation was "Cereal Beverage." The amended return showed a net income of $7,773.31 for the year 1931, and also showed that he took a deduction of $46,156.54 for losses on the sale of stocks and bonds in that year. On July 26, 1932, the assessor of incomes notified respondent of the amount of tax payable based upon his amended return. This notice designated the amount of taxes as follows:

Normal income taxes.................$1,505.36
Teachers' surtax .................... 235.60
Unemployment relief tax............. 3,385.07

Total additional taxes............$5,126.03

Accompanying the notice were schedules which showed how the separate items of taxes were arrived at. At the time in question, the three-year-average law was in effect, and

under sec. 71.10 (1m) (a), Stats. 1931, the normal income tax and teachers' retirement fund surtax payable in 1932 were computed upon the average of respondent's net income for the years 1929, 1930, and 1931. The schedules attached to the notice of July 26, 1932, show that in arriving at the average taxable income upon which the items aforesaid were computed, the figure used as respondent's net income for the year 1931 was $7,773.31, the amount reported in his amended return. The unemployment relief tax of $3,385.07 was imposed by sec. 4 of ch. 29, Laws of Sp. Sess. 1931–1932. This tax was on the actual net income of 1931 and not on the average of the respondent's net incomes for the preceding three years. At this time, in determining respondent's taxable income for purposes of the unemployment relief taxes under sub. (2) (b) of sec. 4 of ch. 29, Laws of Sp. Sess. 1931–32, gains or losses on sales or disposition of stocks, bonds, and other securities were not applicable unless such stocks, bonds, or other securities were held by the taxpayer in the course of his regular trade or business. The deduction of $46,156.54 taken by respondent in his amended return of the year 1931, for losses arising from the sale of stocks and securities in that year, was proper and was allowed in determining the normal income tax and the teachers' surtax. The deduction was disallowed by the assessor of incomes in determining the unemployment relief tax. The schedules attached to the notice of July 26, 1932, sent by the assessor of incomes to respondent, showed that in arriving at the respondent's taxable income for 1931, upon which the unemployment relief tax was computed, the item of $46,156.54 was added to the item of $7,773.31 reported by respondent as his 1931 net income.

On September 1, 1932, respondent paid the taxes as designated in the notice from the assessor of incomes, dated July 26, 1932. However, the item of $3,385.07, the amount of the unemployment relief tax, was paid under protest. It appears that soon thereafter a field audit was made of re-

spondent's accounts and records for the years 1924 to 1931, inclusive. This audit was completed January 30, 1933. Following the completion of this field audit, and based thereon, an additional assessment of taxes was made against respondent, and notice thereof was sent to him by registered mail on February 10, 1933. A copy of the audit report upon which the additional assessment was made was inclosed with said notice. This audit report covered respondent's income for each year from 1924 to 1931, inclusive, and disclosed that for the year 1931 there was no additional income to that reported by respondent in his amended return. However, the deduction of $46,156.54 taken by respondent for losses arising from the sale of stocks and securities in 1931 was disallowed, and said amount was added to the amount of net income reported for 1931. This was shown on the schedules inclosed by the assessor of incomes with the notice of February 10th.

The audit report showed that for the years preceding 1931, respondent's net income was in excess of that which he had reported. This additional income was in the years 1924 to 1930, inclusive, and resulted in the adjustment of the normal income taxes and teachers' retirement fund surtaxes due and payable in each of said years. The normal income tax and the teachers' retirement fund surtax payable in 1932 were based upon respondent's average taxable income for the years 1929, 1930, and 1931. By reason of finding additional income in the years of 1929 and 1930, the average taxable income for 1931, upon which the normal tax and the teachers' retirement fund surtax payable in 1932 were computed and adjusted, was larger, resulting in the field audit showing that respondent owed additional normal income tax and teachers' retirement fund surtax payable in 1932, that is, an amount in excess of what respondent had paid on September 1, 1932. Respondent did not protest the additional assessment or request a hearing. He paid the taxes as specified in the notice of February 10, 1933.

On June 5, 1935, respondent filed a claim with the assessor of incomes for a refund of $3,155.05, with interest thereon, of the unemployment relief tax of $3,385.07, which he had paid under protest. The difference of $230.02 is the amount of the unemployment relief tax which respondent did not dispute. The claim for refund was based upon the contention that in 1931 respondent was engaged in the securities business, and therefore was entitled to the deduction which he had taken for losses sustained on the sale of securities in that year. The assessor of incomes denied respondent's claim for a refund on the ground that the field audit and subsequent notice of additional assessment closed the year 1931 to further adjustment and that this claim was barred by sec. 71.17 (3), Stats. 1931.

Thereafter respondent made application for a hearing before the income tax board of review of Fond du Lac county. This board reversed the ruling of the assessor of incomes and allowed respondent's claim for a refund. The assessor of incomes appealed to the Tax Commission for a review of the order of the county board of review, and on March 18, 1938, the Tax Commission reversed the order of the Fond du Lac county board of review and denied respondent's claim for a refund, holding that the field audit, to which reference has been made, closed the year 1931 to further adjustment by way of a claim for refund under the provisions of sec. 71.17 (3), Stats. 1931. Respondent then appealed to the circuit court for Fond du Lac county for a review of the determination and order of the Tax Commission resulting in the judgment for respondent from which this appeal was taken.

Appellants' first contention is that since respondent made no request for a hearing after notice of the result of the field audit, his claim for refund is barred under sec. 71.17 (3), Stats. 1931, which provides:

"(3) No refund shall be made and no credit shall be allowed on any item of income or deduction, assessed as a

result of an office audit, the assessment of which shall have become final and conclusive under the provisions of section 71.12, 71.13, 71.14, 71.15 or 71.16; *and no refund shall be made and no credit shall be allowed for any year, the income of which was assessed as a result of a field audit, and which assessment has become final and conclusive under the provisions of section 71.12, 71.13, 71.14, 71.15, or 71.16."*

Sec. 71.12, Stats. 1931, so far as here material, provides:

"No additional assessment by office audit or field investigation shall be placed upon the assessment roll without notice in writing to the taxpayer giving him an opportunity to be heard in relation thereto. . . . Any person feeling aggrieved by such assessment shall be entitled to a hearing before the tax commission in the case of corporations or the county board of review in the case of persons other than corporations, *if within twenty days after notice of such assessment* he shall apply for such hearing in writing, explaining in detail his objections to such assessment. *If no request for such hearing is so made, such assessment shall be final and conclusive."*

The unemployment relief tax, which is the subject of respondent's claim for refund, was imposed by sec. 4, ch. 29, Laws of Sp. Sess. 1931–32, as a special tax upon 1931 income only, and became payable in 1932. The act provides that the provisions of the general income tax law relating to refunds are applicable to refunds of the unemployment relief tax in the same manner as they apply to refunds of normal income taxes and surtaxes. Subs. (2) and (3) of sec. 4, of ch. 29, Laws of Sp. Sess. 1931–32, provides:

"(2) The emergency tax on incomes levied in this section shall be assessed, collected and paid in the same manner, upon the same income, and at the same time as provided by law for the assessment, collection and payment of the normal income tax on persons other than corporations. . . ."

"(3) The exemptions specified in section 71.05 shall apply to the emergency income taxes herein imposed, . . . as shall all other provisions of law governing normal income taxes, except as otherwise expressly provided in this section. . . ."

The respondent contends that the field audit, which included the year 1931, did not close that year to adjustment and refund because the field audit did not disclose an additional assessment of income and tax for said year. It is true that the field audit report showed respondent's net income during 1931 to be the same as reported in his amended return for that year, however, it also showed that there was added to the sum of $7,773.31 the sum of $46,156.54, being the amount deducted by respondent in his amended return for 1931. It is also true that no additional unemployment relief tax was imposed for the year 1931; it had been previously assessed against and paid by respondent under protest. However, the field audit did result in an additional assessment in the normal income tax and in the teachers' retirement fund surtax. The additional assessment in the normal income tax and the teachers' retirement fund surtax resulted by reason of the three-year average based upon respondent's average taxable incomes for the years 1929, 1930, and 1931. The notice of February 10, 1933, following completion of the field audit showed that the additional normal income tax and the surtax payable in 1932 were computed on a basis that involved a consideration of respondent's net income for the year 1931 because of the three-year average, to which reference has been made. The notice of additional assessment showed additional taxes as follows:

Normal income tax..................$4,825.57
Teachers' retirement surtax...........    797.13

Total additional.................$5,622.70

It will be noted that the field audit resulted in an increase of $3,320.21 in the normal income tax and an increase of $561.53 in the teachers' retirement fund surtax which respondent paid without protest.

The respondent argues that a field audit only closes a year to further adjustment in cases where the audit discloses that

the taxpayer had income for the *given year* of a greater amount than he had reported. The purpose of a field audit is more conclusive. Respondent's additional income for the years 1929 and 1930 was averaged with respondent's net income for 1931, as reported in his amended return, by reason of which there was an additional average taxable income for the year 1931 upon which normal income taxes and teachers' retirement fund surtaxes due in 1932 were computed. Respondent was notified of an additional average taxable income for 1931 and of additional taxes which he, in fact, paid. The scope and conclusiveness of a field audit was passed upon by this court in *Newport Co. v. Tax Comm.* 219 Wis. 293, 299, 261 N. W. 884. The court there said:

"The field audit, however, contemplates a verification of the facts as reported in the return of the taxpayer, and a complete review of the taxpayer's books for the purpose of establishing accurately and finally the facts with respect to its income. The field audit was therefore intended to foreclose any further inquiry into the facts relative to the taxpayer's income for the year or years under audit. . . . When a hearing is had upon an assessment proposed as the result of a field audit, the taxpayer must establish its right to a refund as defensive matter tending to show that no additional tax should be assessed, or that the additional tax claimed to be due by reason of new discoveries upon the audit should be reduced by the amount claimed as a refund. . . . The taxpayer took the position that the refund involved wholly separate procedure, and that a separate application for a refund should follow the hearing upon the additional assessment. To sustain the taxpayer's contention would permit the taxpayer to introduce intolerable delays into the process of ascertaining its proper tax."

While the unemployment relief tax was a special tax upon respondent's 1931 income payable in 1932, the field audit did cover the year 1931 and did result, because of the three-year average (1929, 1930, and 1931), in an additional normal income tax and teachers' retirement fund surtax. It was

not necessary that an additional unemployment relief tax result, by reason of the audit, in order to close the year 1931 to further adjustment. As stated in *Newport Co. v. Tax Comm., supra,* the field audit contemplates a verification of the facts as reported in the return of the taxpayer. It is a complete review of the taxpayer's books for the purpose of establishing accurately and finally the facts with respect to the taxpayer's income.

Sec. 71.17 (3), Stats., is a limitation statute; as such, it fixes the time within which objections must be made or appeals taken. Respondent having made no objection to the additional normal income tax and teachers' retirement fund surtax following the field audit report, or not having requested a hearing, we are of the opinion that his claim for a refund was properly denied. The order of the Wisconsin Tax Commission dated March 18, 1938, must be affirmed.

While additional questions are fully and ably discussed in the briefs of counsel, because of the conclusion reached that respondent's claim for a refund is barred by sec. 71.17 (3), Stats., it is not necessary to consider them.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment affirming the order of the Wisconsin Tax Commission dated March 18, 1938, disallowing respondent's claim for a refund.

A motion for a rehearing was denied, without costs, on June 4, 1940.