## CHESTNUT SECURITIES CO. v. OKLAHOMA TAX COMMISSION.

### No. 2289.

Circuit Court of Appeals, Tenth Circuit.

Jan. 16, 1942.

Writ of Certiorari Denied April 13, 1942.

See 62 S.Ct. 1035, 86 L.Ed. ——.

Richard B. McDermott, of Tulsa, Okl. (Charles A. Coakley and G. Ellis Gable, both of Tulsa, Okl., on the brief), for appellant.

F. M. Dudley, of Oklahoma City, Okl. (A. L. Herr and C. D. Stinchecum, both of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

MURRAH, Circuit Judge.

The State of Oklahoma assessed and collected the statutory tax on the income from certain intangible securities owned by the taxpayer, the Chestnut Securities Company, a Delaware corporation, licensed and doing business in the State of Oklahoma, for the taxable years 1936, 1937 and 1938. The intangible securities in question and the income therefrom have at all times remained physically outside of the State of Oklahoma.

This suit is for recovery of the tax and jurisdiction is based on diversity of citizenship and the requisite amount in controversy. The trial court held that by reason of the nature and extent of the business carried on or transacted in the State of Oklahoma by the taxpayer, the intangible property acquired a taxable or business situs in the State, as a consequence of which the income therefrom was subject to the income tax laws of the State of Oklahoma. The taxpayer has appealed.

The questions for decision are (1) does the nature and extent of the business carried on or transacted within the State of Oklahoma bring its income within the scope of the taxing act, and (2) if the taxpayer and its income falls within the scope of the act, does the asserted power to tax contravene the "Due Process" and "Equal Protection" clauses of the Fourteenth Amendment to the Constitution.

"Taxable situs" or jurisdiction to tax depends upon our answer to the stated propositions.

In 1935, the State of Oklahoma enacted a new and comprehensive tax law, Title 68, Okl.St.Ann. §§ 871 to 913, incl. Laws of 1935, page 286, House Bill No. 192, effective April 23, 1935. Section 6 of the said Act, Sec. 876, Okl.St.Ann. § 68, provides: "(a) A tax is hereby levied upon every person as defined in Section 4(b), 68 Okl.St.Ann. § 874(b) [The term "person" means an individual, a trust or estate, a partnership or a corporation], which tax shall be collected and paid, for each taxable year, upon, and with respect to, the entire net income of such person, which is derived from all property owned and/or business transacted within this State. * * *" Section 5(a) of the said Act, Sec. 875(a), Title 68, Okl.St.Ann., provides: "The term 'property owned', as used in Section 6, shall, for the purpose of this Act, include the classes of property hereinafter enumerated in this Section, and a taxable situs within the State of Oklahoma is hereby declared to exist with respect to the following: * * * (2) All unsecured obligations (or other evidences of debt), all obligations or debts secured by mortgages or liens upon property located here or elsewhere, all stocks in any corporation and bonds of any State or municipal or political subdivision thereof.

"(b) The term 'resident,' as herein used, refers not only to a resident individual, as defined in Section 4(:),[1] but, in addition, refers to and includes any corporation whose principal business is carried on or transacted in Oklahoma. Such a corporation shall be deemed to be a resident of this State, for income tax purposes, and its income shall be determined, and the tax thereon collected and paid, as if it were incorporated under the laws of Oklahoma, notwithstanding its corporate domicile is elsewhere."

Manifestly, it was the legislative purpose to provide a uniform system of taxation with respect to and upon income from all sources within the realm of its jurisdiction. The purpose and effect of Section 4(j) (See Note 1) is to bring any individual who maintains a place of abode within the State and spends in the aggregate more than seven months of the taxable year there, within the scope of the taxing Act, regardless of the fact that such individual person may have declared his domicile to be elsewhere. Likewise, the purpose and

[1] Section 4(j). "The term 'resident individual' applies only to natural persons and includes, for the purpose of determining liability to the tax imposed by this Act, upon or with reference to the income of any taxable year, any person domiciled in the State of Oklahoma, and any other person who maintains a place of abode within the State and spends, in the aggregate, more than seven months of the taxable year within the State."

effect of Section 5(b) is to bring any corporation whose principal business is carried on or transacted in Oklahoma within the scope of the taxing Act, notwithstanding its corporate domicile is designated elsewhere.

This brings us to the question of whether the activities of the taxpayer within the State of Oklahoma bring them within the category of those corporations carrying on or transacting their principal business within the State. The facts are not materially in dispute, but their legal effect, when measured by the definitive provisions of Section 5(b), is in controversy.

The taxpayer corporation was chartered by the State of Delaware on December 2, 1931, and licensed to do business in the State of Oklahoma on December 28, 1931. Consistent with its declared corporate purposes, soon after its incorporation it acquired certain intangible securities consisting of stocks, bonds and notes. It also acquired a small office building located in Tulsa, Oklahoma. Wilmington, Delaware, was designated as the principal place of business in the corporate charter, however all of its stockholders and directors resided at Tulsa, Oklahoma, and all of the meetings of the Board of Directors, at which was formulated and adopted the business policies of the corporation, were at all times held in Tulsa.

On January 31, 1932, the taxpayer sold the small office building located in Oklahoma and permitted its license to do business in the state to lapse as of July 21, 1933. Thereafter it was not licensed to do business within the State of Oklahoma until October 1936, when it acquired a non-operating interest in oil and gas properties within the State, whereupon it renewed its license to do business within the State on October 21, 1936, and was at all times during the taxable years in question duly licensed to do business within the State of Oklahoma.

During this time, the corporate affairs were managed and controlled by the Board of Directors at their meetings in Tulsa, Oklahoma. No person outside of the State of Oklahoma had authority to transact any business for and on behalf of the company except as ordered by the Board of Directors at Tulsa, Oklahoma. It maintained an office in Delaware, apparently through a corporation service company, as permitted by the laws of that State. The office was in charge of a part-time employee, designated as Assistant Secretary, who received a salary of $25 per month. The Assistant Secretary, in the performance of his duties, received the income from the intangible investments of the corporation and from other sources, depositing the same in a bank at Wilmington to the credit of the corporation. He was also custodian of the physical evidence of certain intangible investments of the corporation, and it was his duty to make delivery of the intangibles when sold or to receive the same when purchased, to keep books of account, and transmit duplicates to the secretary and treasurer who resided at Tulsa, Oklahoma. He had no authority to draw checks on the bank account or to purchase any securities or properties of any kind, or to dispose of any assets of the corporation, except at the direction of the Board of Directors, or managing officers at Tulsa, Oklahoma.

The taxpayer employed the Union Trust Company of Pittsburgh, Pennsylvania, as its agent in handling certain of its intangible investments. This agency held certain of the funds of the corporation as well as the physical evidence of the intangible assets. It received the income from the same and disposed of it only at the direction of the Board of Directors or managing officers at Tulsa, Oklahoma.

A part of the intangible investments and the income therefrom was in the custody of the Missouri Valley Trust Company of St. Louis, Missouri, who exercised like functions at the direction of the corporate officers in Tulsa, Oklahoma. The intangible securities were purchased or sold upon the New York Stock Exchange. When sold or purchased, delivery and payment therefor was made in New York City. No person or corporation outside of the State of Oklahoma had authority to buy, sell, or exchange the intangible assets of the corporation, or to issue any check for the payment of same, except the corporate officers in Tulsa, Oklahoma.

In reality, the taxpayer is a corporation organized under the laws of Delaware, its corporate officers and stockholders reside at Tulsa, Oklahoma. Primarily it is engaged in the business of acquiring and holding intangible securities for investment purposes. A small part of the income from the intangible securities is invested in mineral properties located in Texas and Oklahoma, but it does not operate these properties and their owner-

ship there is of but little consequence in the consideration of the question presented. The corporate officers determine the business policies of the company at Tulsa, Oklahoma; the nerve center of all business and of all transactions is located there; no transaction is consummated unless and until the directors, residing in Tulsa first determine upon the action to be taken. For purposes of convenience, all of the intangible assets of the company are located outside of the State of Oklahoma, and the mechanical acts by which the assets are purchased and sold, and the income realized thereon, are performed outside of the State of Oklahoma, yet the determinative acts by which the intangible assets are acquired, and the income realized, are performed in the State. After the Board of Directors at Tulsa, Oklahoma determine to purchase or sell a particular security, they notify their broker at Pittsburgh, St. Louis, or elsewhere, to purchase or sell the same, as the case may be. The act of purchasing or selling is the act of the Board of Directors or corporate officers at Tulsa, Oklahoma, exercised through delegated agencies. Absent determinative action upon the part of the Board of Directors or corporate officers, no securities would be purchased or sold, and hence no income realized.

Under these facts, we are asked to say that this corporation transacts its business principally where the securities are purchased and sold, and not at the source of the power from which emanates all authority. The determination of this question is a matter within the peculiar competence of the courts of Oklahoma, and they have not spoken.

In Chestnut Securities Co. v. Oklahoma Tax Commission, 173 Okl. 369, 48 P.2d 817, the Oklahoma Supreme Court held that under the same facts here presented, the intangible securities of this corporation, located outside the State of Oklahoma, did not acquire a business situs within the State. But the decision there rested upon entirely different considerations, under a different taxing act. There the court was asked to decide whether or not the control exercised over the intangible property by the Board of Directors' meetings in the State of Oklahoma authorized the state to levy a tax upon the value of its capital stock employed in Oklahoma as a condition to the privilege of doing business within the State. The court, recognizing that in-

tangible property may, under certain circumstances and conditions, acquire a business situs separate and apart from the domicile of the owner, followed the general rule that for intangible property to acquire a business situs separate and distinct from the domicile of the owner, it must be employed directly in the transaction of business within the state so as to become an integral part of the property of the state in which it is employed. The court concluded that these intangible properties were not located within the state, or used in the business of the taxpayer transacted in this state. But see State v. Atlantic Oil Producing Co., 174 Okl. 61, 49 P.2d 534; Ford Motor Co. v. State, 178 Okl. 193, 62 P.2d 48; Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143.

There is nothing in the decisions of the Supreme Court of the State of Oklahoma which would require or influence us in arriving at a legal conclusion based upon these facts. From the application of our independent judgment, we are drawn irresistibly to the conclusion that under these facts, the taxpayer corporation is carrying on or transacting its principal business within the State of Oklahoma, and therefore comes within the definition of Section 5(b). To hold otherwise would permit the form to obscure the substance, and to ignore the realities of a practical problem in taxation.

We pass now to the question of whether the asserted power to tax contravenes the due process and equal protection clauses of the Fourteenth Amendment.

█ The constitutional power of the state to tax is limited only by its jurisdiction over the objects of its asserted power. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445; Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L. Ed. 1339, 123 A.L.R. 162. In the determination of the question whether the state has exceeded its sovereign jurisdiction in the exaction of a tax upon income, our decision does not depend "upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed." Shaffer v. Carter, supra [252 U.S. 37, 40 S.Ct. 226, 64 L. Ed. 445]; Curry v. McCanless, supra; Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 249, 85 L.Ed. 267, 130 A. L.R. 1229. "A state is free to pursue its own fiscal policies, unembarrassed by the

Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society. * * * The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction." Wisconsin v. J. C. Penney Co., supra.

In practical operation and effect, the State of Oklahoma has by its statute said that if a foreign corporation secures a license to do business within the state, and if its activities therein reach such dominant proportions that it is for all practical purposes carrying on or transacting its principal business in the state, it shall be considered a resident thereof for purposes of taxation, and hence income from intangibles, wholly managed and controlled within the state, are drawn to its jurisdiction and subject to its income tax laws, although such intangibles may be physically located outside of the state. Warrant for the asserted power to tax is derived from dominion over the corporation, whose relationship is the source of the intangible property sought to be taxed. Its exercise is justified by opportunities given, protection afforded and benefits conferred by the taxing state.

■ There is a realistic and practical basis for such a rule in the rationale of our complex and interrelated system of taxation. The definition by which a foreign corporation is constituted a resident for tax purposes parallels the statutory definition of a resident individual who maintains a place of abode within the State of Oklahoma, and spends more than seven months of the taxable year within the State. In either event, it does no more than ignore the form and cling to the substance, and it does no more than require those who avail themselves of the privilege and protection afforded by the State of Oklahoma to bear the proportionate burden. In these circumstances, it cannot be said that the privileges granted are any less, or the burdens imposed more onerous than upon the resident citizens, corporate or individual. The power and jurisdiction of the state to tax income of residents, individual or corporation, on business transacted wholly outside of the borders of the state, is not open to question. Lawrence v. State Tax Commission of Mississippi, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102, 87 A.L.R. 374; Colchensky v. Oklahoma Tax Commission, 184 Okl. 207, 86 P.2d 329. Neither is it beyond the constitutional power of the state to tax income of a nonresident corporation or individual, derived from sources within the state. Shaffer v. Carter, supra, 252 U.S. page 52, 40 S.Ct. page 225, 64 L.Ed. 445.

Thus, whether the power to tax rests upon jurisdiction of the person because of residence or citizenship, Colchensky v. Oklahoma Tax Commission, supra, or upon the property located within the state with citizenship elsewhere, the power to tax is equally plain and within constitutional limits.

The taxpayer cites and relies upon Newport Company v. Wisconsin Tax Commission, 219 Wis. 293, 261 N.W. 884, 890, 100 A.L.R. 1204, certiorari denied 297 U.S. 720, 56 S.Ct. 598, 80 L.Ed. 1004. This case is directly in point and involved the constitutional power of the State of Wisconsin to tax the income from intangible properties of a foreign corporation, licensed to do business within the state when the intangibles sought to be taxed were wholly without the boundaries of the state. The Wisconsin statute is not materially different from the one under consideration here. The Wisconsin court believed itself constrained by the decisions of the U. S. Supreme Court upon the constitutional question. Influenced by what it thought to be the controlling doctrine, it held that the State of Wisconsin could not "by definition, construction, or other process, domesticate a person or corporation in fact domiciled elsewhere, in order to avoid the application of constitutional principles established by the Supreme Court of the United States relative to jurisdiction for purposes of taxation," whether such power was conditioned upon the privilege of doing business in the state, or upon the exercise of the power to define and label business carried on or transacted within the state. But the Wisconsin court could see some merit in the contention that "since taxes are thought to have some relation to the protection furnished to the taxpayer, there are more substantial grounds for giving to the state, where the principal business is conducted, jurisdiction to tax all its income, rather than the state of its domicile, to which, in

many cases, its only real relation is that it has filed articles of incorporation there."

The Wisconsin court also thought itself constrained by constitutional inhibitions in Wisconsin v. J. C. Penney Co., supra, wherein the power of the state to tax the privilege of paying dividends out of income derived from property located and business transacted in the state, when such dividends were paid outside of the state to non-resident stockholders was challenged. But the Supreme Court of the United States did not find any constitutional objections to the exaction of the tax because the dividends were paid outside of the state to non-residents, and by its decision the Supreme Court has made it abundantly clear that the Fourteenth Amendment places only "extremely limited restrictions" upon the taxing power of a sovereign state. The line of demarcation between jurisdiction to tax, and the absence of it, is clearly discernible from modern authority in the consideration of the recent cases which have passed upon the asserted power of the states to tax intangible property.

In Connecticut General Life Insurance Co. v. Johnson, 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673, the Supreme Court denied the State of California power to tax premiums on reinsurance contracts, entered into in the State of Connecticut where the premiums were paid, and where the losses, if any, were payable although the taxpayer was licensed to do business within the State of California, and was otherwise engaged in business in California. The court held that the performance of these acts were not dependent upon any privilege or authority granted by the State of California, and the California laws afforded them no protection, therefore the business transacted had no proper relationship to the privilege of doing business within the State of California. In Wisconsin v. J. C. Penney Co., supra, subsequently decided by the Supreme Court, the court said, speaking of Connecticut General Life Ins. Co. v. Johnson, supra, "In the precise circumstances presented by the record it was found that the tax neither in its measure nor in its incidence was related to California transactions."

It cannot be said here that the acts performed by the non-resident corporation, under the privileges and protection granted by the state, are not directly related and inseparably associated with the realization of the income upon which the state has imposed a tax. It is clear that the state of Oklahoma did not transcend the limits of its jurisdiction, as fixed by the due process and equal protection clauses of the Constitution, by constituting the taxpayer a resident of the State of Oklahoma for income tax purposes.

In our view, taxable residence as defined by Section 5(b) is not a condition imposed for the privilege of doing business within the State. A corporation may enter the state for the purpose of carrying on or transacting business, and do so effectively and profitably without bringing itself within the category of foreign corporations whose principal business is carried on or transacted in Oklahoma. The question, like most all problems in taxation, depends upon the degree, or turns upon the peculiar facts having a just and practical relationship to the protection afforded and benefits conferred. Under the peculiar facts, the question in each case is what is the relationship of the State of Oklahoma to the intangibles, the income from which is sought to be taxed. The answer here, lies in the established fact that the determinative act by which the capital of the corporation is invested in securities for the purpose of realization of income, originated in Oklahoma without which there would have been no income. The performance of these determinative acts were dependent upon the privileges afforded and the protection granted to the taxpayer by the State of Oklahoma.

It follows that if the State of Oklahoma may attribute a taxable situs to a corporation, it may upon the soundest principles subject its intangible property to the income tax laws of the State, wherever located, as if it were a citizen of the State of Oklahoma. Colchensky v. Oklahoma Tax Commission, supra; Splane v. Oklahoma Tax Commission, 186 Okl. 463, 99 P.2d 120.

The judgment is affirmed.