CATHERINE SULLIVAN, as Administratrix, etc., of DENNIS F. SULLIVAN, Deceased, Appellant, *v.* BOOTH & FLINN, LTD., Respondent.

Second Department, October 10, 1924.

Workmen's compensation — negligence — action to recover for death of plaintiff's intestate who was killed while working in construction of New York-New Jersey vehicular tunnel under bed of Hudson river — decedent was not engaged in work in navigable water — decedent was not engaged in maritime work or in interstate commerce — plaintiff's remedy is under Workmen's Compensation Law — leave to appeal to Court of Appeals denied.

A workman engaged under the bed of the Hudson river in the construction of the New York-New Jersey vehicular tunnel is not working in public navigable waters that are under Federal control and under the jurisdiction of the Federal government, nor is he engaged in maritime work or in interstate commerce, and, therefore, a complaint in an action to recover for his death, which was caused by

injuries received while he was working in the construction of the tunnel, must be dismissed and the plaintiff relegated to her remedy under the Workmen's Compensation Law.

Application for leave to appeal to the Court of Appeals from an order of the Appellate Division affirming an order of the Supreme Court dismissing the complaint is denied.

MOTION by the plaintiff, Catherine Sullivan, as administratrix, for leave to appeal to the Court of Appeals from an order of the Appellate Division affirming an order of the Supreme Court, made at Special Term and entered in the office of the clerk of the county of Kings on the 12th day of January, 1924, dismissing the complaint on the ground that it did not state facts sufficient to constitute a cause of action. (See 209 App. Div. 897.)

*Frank X. Sullivan* [*Theodore H. Lord* of counsel], for the motion.

*Paul Grout* and *Charles B. La Voe,* opposed.

KELLY, P. J.:

We think the application for leave to appeal to the Court of Appeals from our affirmance of the order granting defendant's motion for judgment on the pleadings in this case should be denied. As no opinion was filed upon such affirmance, we think it proper at this time to state the reasons for our decision.

The complaint alleges the death of Dennis F. Sullivan on August 20, 1923, intestate, leaving him surviving plaintiff, his widow, and six children, five daughters and one son.

It is alleged that on the day aforesaid the decedent was employed by the defendant in a tunnel under the Hudson river and that he received injuries through the negligence of defendant, his employer, in failing to supply him with a proper place to perform his work, and in allowing the place in which decedent was working to become unsafe and dangerous, and in allowing a guard rail on a scaffold or platform to be improperly constructed and to be in an unsafe and dangerous condition so that it gave way while decedent was walking on a scaffold or platform, and decedent was precipitated into the caisson and killed.

The defendant moved for judgment upon the ground that the complaint does not state a cause of action. The learned justice at Special Term granted the motion upon the ground that decedent was engaged in work covered by the Workmen's Compensation Law of 1922, and that plaintiff administratrix could not maintain the action. (122 Misc. Rep. 288.)

The plaintiff contends that the construction of the tunnel in question between the States of New York and New Jersey was carried on by the States of New York and New Jersey by com-

missions created by the Legislatures of those States,* and that the Secretary of War of the United States under authority of an act of Congress† had issued a permit for the construction of the tunnel; that the tunnel was being constructed for pedestrian and vehicular traffic between the two States and for interstate commerce and trade; that it was a " new agency for interstate commerce between the said States;" that the States named entered into a contract with defendant for the construction of part of the tunnel in question " in the bed of and under the Hudson River between the bulkhead lines as established by the United States of America;" that the cost of the work was to be borne equally by each of said States; that decedent met his death while working on said construction for defendant between said bulkhead lines.

Plaintiff asserts that the construction of the tunnel is essentially an interstate project, that the place where decedent was injured was under Federal control and that neither of the States " could extend the jurisdiction of a State statute, *i. e.*, the Workmen's Compensation Act (*sic*), to such territory;" that the accident occasioned by defendant's alleged negligence occurred in a caisson in the channel of the Hudson river, a navigable stream, and was, therefore, a maritime tort, and that the Special Term misconceived the law. Plaintiff refers to the statement in the opinion of the learned justice at Special Term on granting the motion, that it was claimed that the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143) applied to decedent, whereas, plaintiff says, defendant was not a common carrier or engaged in interstate transportation, and it is not claimed that the Federal act applied to the case.

The respondent argues that the allegation in the complaint is that the tunnel is in course of construction and is to be used *when completed* for interstate trade; not that it was being so used at the date of the accident but that it will be so used after construction is completed.

The test, says respondent, is: " Was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" (*Industrial Accident Commission* v. *Davis*, 259 U. S. 182, 185; *Conklin* v. *New York Central R. R. Co.*, 206 App. Div. 524.)

The appellant contends that the construction of the tunnel was work " done in navigable waters;" that the place of the injury was

---

* See N. Y. Laws of 1919, chap. 178; N. J. Laws of 1918, p. 142, chap. 50; N. J. Laws of 1919, p. 128, chap. 70; N. J. Laws of 1920, p. 140, chap. 76.— [REP.

† See River and Harbor Appropriations Act of 1899 (30 U. S. Stat. at Large, 1151), § 10.— [REP.

under Federal control; that the excavation was " in a navigable stream;" that the territory was " under the jurisdiction of the Federal government;" and that the decedent was engaged in " purely interstate work."

I agree with the learned justice at Special Term that the plaintiff is wrong in each of these contentions. The land under the water of the Hudson river does not belong to the United States; it is not interstate territory solely under the jurisdiction of the Federal government, as claimed by plaintiff. The boundary line between the States of New York and New Jersey is defined in the agreement of 1833 between the States (confirmed, State Law, § 7): " Article First.— The boundary line between the two States of New-York and New-Jersey, from a point in the *middle of Hudson river opposite the point on the west shore thereof, in the forty-first degree of north latitude, as heretofore ascertained and marked, to the main sea, shall be the middle of the said river, of the Bay of New-York, of the waters between Staten-Island and New-Jersey, and of Raritan bay, to the main sea, except as hereinafter otherwise particularly mentioned." It is provided in article 3 of the agreement that the State of New York shall have exclusive jurisdiction over the waters of the Hudson river lying west of Manhattan Island, south of Spuyten Duyvel creek and over the lands covered by said waters to the low-water mark on the westerly or New Jersey side thereof, subject to the rights of the State of New Jersey as therein defined, to wit, the State of New Jersey shall have the exclusive right of property in and to the land under water lying west of the middle of the river between Manhattan Island and New Jersey, and shall also have exclusive jurisdiction over the wharves, docks and improvements, on the shore of said State, as well as of vessels aground on said shore or fastened to the wharves or docks. (See, also, 4 Comp. Stat. N. J. 5358, 5359, § 5 *et seq.*) The Federal government assented to the agreement of 1833 between the States by act of Congress, June 28, 1834 (4 U. S. Stat. at Large, 708, chap. 126). There is nothing in the agreement and confirmatory statutes abdicating property rights in favor of the United States, and the transaction simply amounted to fixing the boundaries between the two States. (N. Y. Laws of 1834, chap. 8; N. J. Laws of 1833–34, p. 118; *Hamburg American Steamship Co.* v. *Grube,* 196 U. S. 407, affg. 176 N. Y. 383.)

So I conclude that the land under the water of the Hudson river does not belong to the Federal government. The Federal government is granted the power to regulate commerce and navigation (U. S. Const. art. 1, § 8, subd. 3), and as to such commerce and navigation in the waters of the river its right is supreme. This is what is

decided in *People* v. *Hudson River Connecting R. R. Corp.* (228 N. Y. 203), cited by appellant. That case had to do with a bridge over the waters of the river and the right of Congress to authorize a pier in the middle of the river. A bridge over the river, and a pier in the middle of the stream are matters directly connected with navigation in the river itself. The Federal jurisdiction is exercised over the water to regulate navigation, but so far as construction in land under the water is concerned I cannot see how the Federal authorities have anything to do with it, provided of course that such under water construction does not affect navigation in the river. In the case of the tunnel described in the complaint in the case at bar, it is alleged that the Secretary of War has approved the construction by a permit attached to the complaint, which very properly " merely expresses the assent of the Federal government so far as concerns the public rights of navigation. (See *Cummings* v. *Chicago,* 188 U. S. 410.) "

Nor was the decedent engaged in interstate commerce. Until completion the tunnel was an inchoate enterprise. It might never be completed. In its construction the States were engaged in building on their own properties a structure intended for future interstate traffic, but until completion I can see no connection between the construction work and such interstate traffic than there would be between the construction of a pontoon, or other equipment or vessel on the land, which had never been placed in the water, and the business in which such structure might be engaged if finally completed and put into the water. It was held in one of the cases involving the applicability of the Oregon Workmen's Compensation Law that an accident on a vessel in the course of construction was not governed by maritime law. (*Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469, 475, 476.)

The respondent cites *Jackson* v. *Chicago, M. & St. P. R. Co.* (210 Fed. Rep. 495), where it was held that the plaintiff, engaged in the construction of a tunnel on a cut-off under a mountain on an interstate railroad, was not engaged in interstate commerce, and that he was not injured by any one connected with the operation of any of the agencies which actually transported interstate commerce. It was held in *New York Central R. R. Co.* v. *White* (243 U. S. 188) that employment in guarding tools and materials intended for use in the construction of a new railroad station and new tracks which when finished will be used in interstate commerce, has no such direct relationship to interstate transportation as will afford basis for applying the Federal Employers' Liability Act in case of accident or death.

The learned counsel for the appellant in the case at bar insists

that he is not relying on the Federal Employers' Liability Act and complains of the reference to that act in the opinion of the justice at Special Term. He says he bases his case upon the contention that the place where the deceased was injured was under Federal control, and as I have already pointed out I think this construction work was not under Federal control. The Federal Supreme Court said in the *White Case* (*supra*), referring to the watchman guarding the tools and materials intended to be used in the construction of a new station and new tracks upon a line of interstate railroad: " The admitted fact that the new station and tracks were designed for use, when finished, in interstate commerce does not bring the case within the Federal act. The test is, ' Was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it? ' *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.,* 239 U. S. 556, 558. Decedent's work bore no direct relation to interstate transportation, and had to do solely with construction work, which is clearly distinguishable, as was pointed out in *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.,* 229 U. S. 146, 152. And see *Chicago, Burlington & Quincy R. R. Co.* v. *Harrington,* 241 U. S. 177, 180; *Raymond* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* this day decided, *ante,* 43.*" It was held that the New York Workmen's Compensation Law of 1913, as amended in 1914, was constitutional and that the injured watchman must have recourse to the Compensation Commission. The plaintiff, appellant, in the case at bar says that the accident alleged was a "maritime tort." In my opinion there was nothing " maritime " about it. (*State Industrial Commission* v. *Nordenholt Corp.,* 259 U. S. 263; *Riedel* v. *Mallory Steamship Co.,* 196 App. Div. 794.) In the cases cited the injured parties were engaged in work connected with ships or vessels, but it was held that their work was not " maritime " in character. How can it be said that decedent, engaged in this very dangerous work of excavating in the *land under water,* was performing a " maritime " service? " Maritime " is defined, " 1. Of, pertaining to, or connected with the sea or its uses; having physical relation to the sea: as, *maritime* dangers or pursuits; a *maritime* town or power. * * * 2. Relating to or concerned with marine navigation, employment, or interests: as, *maritime* law; a *maritime* project." (Century Dict. p. 3631.) The chief anxiety of the tunnel builders is to keep away from the water.

I think the widow and children of this unfortunate man are relegated to the Workmen's Compensation Law, which the Court

---

* See 243 U. S. 43.— [REP.

of Appeals and the Federal Supreme Court have declared is constitutional.

These were our reasons for affirming the order granting defendant's motion for judgment on the pleadings.

The application for leave to appeal to the Court of Appeals is denied, but without costs.

RICH, JAYCOX, MANNING and KELBY, JJ., concur.

Motion for leave to appeal to the Court of Appeals denied.