ANDERSON BROTHERS CORP. *v.* STONE, CHAIRMAN, STATE TAX COMMISSION

No. 39717          March 5, 1956          85 So. 2d 767

28

*Kellner & Kellner, Philip Mansour,* Greenville, for appellant.

*John E. Stone,* Jackson, for appellee.

KYLE, J.

This case is before us on appeal by Anderson Brothers Corporation, plaintiff in the court below, from a judgment of the Circuit Court of Washington County in favor of A. H. Stone, Chairman of the State Tax Com-

mission, defendant, denying the plaintiff's claim for recovery of sales taxes in the sum of $19,433.27 paid to the defendant as commissioner under Chapter 119, Laws of Mississippi, 1934, and amendments thereto, as the result of an additional assessment made by the commissioner on March 23, 1953, and the issuance of a jeopardy warrant to enforce the payment of same.

The record shows that the appellant is a foreign corporation, organized under the laws of the State of Texas and having its principal office in the City of Houston, Texas, and is engaged in the business of contracting for the construction of pipe lines for a fixed price fee or wage, for pipe line companies. The taxes sought to be recovered in this action are gross income taxes alleged to have accrued and to have become due and owing to the State of Mississippi on account of contracts performed in the State of Mississippi during the period commencing July 1, 1950, and ending February 28, 1953. The additional assessment made by the commissioner on March 23, 1953, was an assessment in the sum of $27,039.69. But after the jeopardy warrant had been levied upon the appellant's machinery and equipment in Washington County, representatives of the appellant appeared before the commissioner and presented additional information upon which credits were allowed for work done outside of the State of Mississippi, and the amount of the assessment was reduced to $19,433.27, which was the amount paid and sought to be recovered in this action.

In its declaration the plaintiff alleged that the assessment of the tax was made by the commissioner without any notice by mail to the plaintiff and without any opportunity being given to the plaintiff to show cause why the alleged sales tax liability in the sum of $27,039.69 should not be paid, and that the jeopardy warrant and all proceedings thereunder were void for that reason. The plaintiff also alleged that the additional assessment made by the Commission was void for the further rea-

son that the tax sought to be imposed constituted a direct burden on interstate commerce, in that the tax was imposed upon the plaintiff's gross receipts from contracts awarded to the plaintiff by pipe line companies for the construction of pipe lines across several states. And finally the plaintiff alleged that $1,110,012.08 of the work performed under the contracts was performed by a subcontractor and that the plaintiff was not liable for the tax on that part of the work done by the subcontractor.

The defendant in his answer denied that the jeopardy warrant and the proceedings thereunder were void, either because of the fact that no notice was sent by mail to the plaintiff of its sales tax liability, or because no opportunity for a hearing was given prior to the issuance of the jeopardy warrant. The defendant denied that the tax assessed against the plaintiff imposed a burden on interstate commerce or that the plaintiff was relieved from liability for the payment of the tax even if it were true that a part of the work was performed by a subcontractor.

The defendant averred in his answer that the plaintiff during the period of time referred to in the additional assessment had contracted for the construction of pipe lines in Mississippi for the Trunk Line Gas Company, Texas Gas Transmission Corporation, Tennessee Gas Transmission Company and Gulf Oil Company, and that each of the several contracts mentioned involved a total contract price greatly in excess of the sum of $10,000.00; that the plaintiff before entering upon the performance of each of said contracts was under a legal duty to execute and file with the defendant a good and valid bond conditioned for the payment of all sales taxes which might accrue to the State of Mississippi on account of the execution and performance of the said contract, and that the plaintiff had failed to execute and file such bond in connection with any of the contracts

except on one contract entered into with the Trunk Line Gas Company which was dated November 30, 1950, and that the plaintiff had failed to pay in advance the sales tax due on such contracts in lieu of furnishing bonds; that the plaintiff had proceeded to perform said contracts without fully securing unto the State of Mississippi the payment of the sales taxes to become due as required by law, and without making accurate and full reports of the contracts being performed by it in the state; and that during the month of March 1953 the representatives of the Tax Commission had notified the plaintiff of the additional taxes due by it and had made verbal demand upon the plaintiff for the payment of same, and such demand had been refused; that the plaintiff at that time had located in Washington County, Mississippi, certain movable machinery and equipment, and the defendant had received information that said machinery and equipment was being moved out of the state; that there was no other property of the plaintiff known by the defendant to be located in the state; and that on March 23, 1953, the defendant having just cause to believe that the collection of the taxes due by the plaintiff would be jeopardized by delay had made an assessment of the sales taxes due and owing by the plaintiff in the sum of $27,039.69, and had issued a jeopardy warrant directed to the Sheriff of Washington County to enforce the payment of said taxes.

The defendant also averred in his answer that, after the sheriff had levied upon the plaintiff's property the plaintiff protested the amount of the taxes assessed, and a conference was held between the representatives of the plaintiff and the commissioner, and the amount of the assessment was reduced to $19,433.27; that the plaintiff then paid that amount to the commissioner and the levy made under the jeopardy warrant was discharged.

The defendant averred that the taxes paid by the plaintiff were justly due on account of the work done

within the State of Mississippi, and the defendant asked that the plaintiff's suit be dismissed.

In its declaration the plaintiff asked for damages against the commissioner, in addition to a refund of the taxes paid; but the claim for damages against the commissioner was abandoned at the beginning of the trial.

The cause was tried before the circuit judge at the June 1954 term of the court by agreement of the parties without the intervention of a jury.

Only two witnesses were examined during the hearing. V. B. Wheeless, Chief of the Sales Use Tax Division of the State Tax Commission, was called to testify as an adverse witness for the plaintiff, and Searcy Smith, Jr., an employee of W. C. Bean, certified public accountant of Houston, Texas, who appears to have been in charge of the plaintiff's bookkeeping department in its home office, testified as a witness for the plaintiff. From the testimony of these two witnesses it appears that the plaintiff had contracted for the construction of four pipe lines for the Tennessee Gas Transmission Company for the aggregate sum of $2,059,232.06. These pipe lines were constructed wholly within the State of Mississippi. Two of these projects had been performed by a subcontractor, who was paid 85 per cent of the contract price for doing the work. The other two projects had been performed by the plaintiff. None of these projects had been reported to the commissioner, and no sales tax had been paid on any of them at the time the jeopardy warrant was issued.

It was also shown that the Chairman of the Tax Commission, early in March 1953, had sent two field representatives to the plaintiff's home office in Houston, Texas, for the purpose of making an audit of the books of the corporation and determining the amount of the taxes due. These field representatives conferred with Mr. Smith, the auditor in charge of the plaintiff's bookkeeping department, and examined the records that were made available to them, but were unable to arrive at the

exact amount of the taxes due because of the lack of information as to the amount of work done within the State of Mississippi under contracts which included work to be performed partly within the State of Mississippi and partly in the State of Tennessee. The field representatives of the commissioner made a second visit to the plaintiff's home office about a week later and had another conference with the plaintiff's auditor. They made a tentative estimate of the amount of the taxes due, and requested payment of that amount. But this amount was disputed, and the field representatives returned to Mississippi to await the receipt of additional information which was to be furnished by the plaintiff's auditor. In the meantime the representatives of the commissioner learned that the plaintiff had machinery and other equipment located in Washington County, and that the machinery and the equipment was being moved out of the state. These facts were reported to the Chief of the Sales Tax Division, and upon the basis of the information which they had in hand an immediate assessment of the tax was made and the jeopardy warrant was issued.

Wheeless testified that he issued the jeopardy warrant in the name of the Chairman of the State Tax Commission, after a thorough discussion of the matter with the Chairman and the Excise Commissioner. He stated that his determination that there should be an immediate assessment of the tax and that a jeopardy warrant should be issued was based upon the following facts.

That the tax was delinquent; that the work being done by the contractor had been completed, and so far as the Tax Commission knew payment had been made to the contractor; that the agents of the Tax Commission had made two trips to the plaintiff's home office in Houston, Texas, for the purpose of determining the tax liability and collecting the tax, but had been unsuccessful in their efforts to effect a settlement of the tax liability; that to the best of his knowledge the plaintiff had no

property in Mississippi out of which. the tax could be made except the machinery and equipment in Washington County, and that machinery and equipment was being moved out of the state; and that it appeared to him that if the commissioner did not take immediate action and manage to retain the machinery and equipment in Mississippi the state would have no jurisdiction over the taxpayer.

Wheeless was interrogated at length concerning the additional assessment which was prepared by the field auditors. The return showed that for the period from July 1, 1950, to June 30, 1951, the plaintiff had reported taxable gross income in the amount of $635,213.54 and had paid sales taxes therein in the sum of $6,352.14; and for the period from July 1, 1951, to June 30, 1952, the plaintiff had reported taxable gross income in the amount of $3,427,458.06, and had paid sales taxes thereon in the sum of $34,274.58. The plaintiff had made no report of taxable gross income for the period from July 1, 1952, to February 28, 1953. From the information obtained by the field auditors, it appeared that an additional tax of $3,989.22 was due for the period beginning July 1, 1951, and ending June 30, 1952, and that an additional tax of $20,592.32 was due for the period beginning July 1, 1952, and ending February 28, 1953. The total amount of the taxes due and unpaid for the period beginning July 1, 1951, and ending February 28, 1953, appeared to be $24,581.54. The damages added amounted to $2,458.15. The assessment for the period beginning July 1, 1952, and ending February 28, 1953, covered the gross income received from the four contracts performed for the Tennessee Gas Transmission Company.

The return signed by the field auditors was made on Form ST-FA, which Wheeless stated was the standard form that had been used by the Tax Commission over a period of 22 years. Wheeless, in answer to questions propound to him by the plaintiff's attorney, stated that there were times when the commissioner made assess-

ments without notifying the taxpayer, but in this case he did notify the taxpayer.

Searcy Smith, Jr., testified that Anderson Brothers' Corporation was engaged in the business of laying pipe lines across the country everywhere. He stated that Anderson Brothers furnished its own equipment and its own labor and laid the pipe lines at a fixed price per foot. The rights of way were furnished by the pipe line companies, and the pipe was also furnished by the pipe line companies. Anderson Brothers dug the ditches and laid the pipe. Much of the labor was employed locally. Some of it was brought in. Smith testified that the contract with Tennessee Gas Transmission Company included four projects, and that all of the work performed under that contract was performed within the State of Mississippi. Two of the projects were sublet to E. C. Pritchard Company. Smith stated that Anderson Brothers' Corporation had qualified to do business in the State of Mississippi, and he offered in evidence a certificate from the secretary of state which showed that the corporation had qualified to do business in Mississippi. Smith testified that the corporation had received no notice by registered mail of an additional assessment of gross income taxes prior to the issuance of the jeopardy warrant on March 23, 1953. His statement about the matter was, ''I didn't receive anything. If it came to the office, I didn't know it.'' He also stated that, if such notice had been received at the office, he would have known it.

On cross-examination Smith admitted that, when Hatcher and Hollowell, the Tax Commission's field representatives, came to Houston, Texas, in March 1953, for the purpose of examining the records of the corporation, the work performed under the contract with the Tennessee Gas Transmission Company had not been reported to the Tax Commission, although all the work to be performed under that contract had been completed. And Smith admitted that Anderson Brothers was moving its

equipment out of the state when the jeopardy warrant was issued. Smith testified on cross-examination that he received notice of the issuance of the jeopardy warrant about two days after Hatcher and Hollowell left his office in Houston, and that he called Hatcher on the telephone and asked him about the assessment, and why he had issued the jeopardy warrant while they were working on an agreement, and Hatcher told him that the warrant had been issued to protect the taxes, since the commissioner learned that Anderson Brothers was moving its equipment out of the state. Smith stated that after the jeopardy warrant had been issued Anderson Brothers' representatives came to Jackson and brought with them additional information which the Tax Commission had requested and which he had prepared, and that upon the basis of the information furnished an agreement was worked out under which the amount of the tax was reduced from $27,039.69 to $19,433.27, and that amount was paid under protest on April 13, 1953.

At the conclusion of the testimony offered on behalf of the plaintiff, the defendant made a motion to exclude the evidence on the ground that it was insufficient to establish the plaintiff's claim that the taxes had been illegally collected or that the plaintiff was entitled to recover the amount paid. The trial judge sustained the motion, and a judgment was entered in favor of the defendant.

The first point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is, that the additional assessment made by the commissioner and the jeopardy warrant issued on March 23, 1953, were void for the reason that no notice of the assessment was given to the appellant by registered mail, as required by Section 10121, Code of 1942, and no opportunity for a hearing before the commission was granted prior to the issuance of the jeopardy warrant. It is argued that such notice and an opportunity to be heard are not only expressly provided for by the statute,

but such notice and an opportunity to be heard are necessary to satisfy the due process requirements of the State and Federal constitutions.

■■■ But we think that the commissioner had a right to make the additional assessment immediately under the facts disclosed by the record in this case, and to issue the jeopardy warrant authorizing the seizure of the appellant's property, as provided in Section 10125 (b), Code of 1942, without waiting for the expiration of the ten (10) days provided in Section 10121 and Sections 10123 and 10124, within which the taxpayer might petition for a hearing.

Section 10125 (b) expressly provides that, if the commissioner has just cause to believe and does believe that the collection of the taxes due by any taxpayer will be jeopardized by delay, he may assess such taxes immediately, and may immediately issue a jeopardy warrant to enforce payment of the taxes.

■■■ There is no express requirement in Section 10125 that notice of an immediate assessment made under authority of subsection (b) be given to the taxpayer by registered mail. But that section must be read and considered along with Section 10121, which confers upon the commissioner the general authority to make such additional assessments and which requires the giving of such notice, and we think that such notice should have been given in this case. The appellant, however, is in no position to complain that such notice was not given, for the reason that the appellant waived its right to object to the want of such notice, or the insufficiency of such notice, when it had its representatives arrange for a conference and appear before the commissioner in Jackson a few days later and present additional information relative to its tax liability, which was accepted by the commissioner, and upon the basis of which the assessment was reduced from $27,039.69 to $19,433.27.

■■■ Mere irregularities in the assessment will not avail to support the recovery back of alleged illegally

exacted taxes. Bailey v. New York, C. & H. R.R. Co., 22 Wall. (U.S.) 604, 22 L. Ed. 840.

"A voluntary appearance of a taxpayer or his representative before the reviewing body, to contest an increase or to obtain relief, is a waiver not only of want of notice but also of any defects in or objections to the form or service of the notice." Cooley on Taxation, Fourth Ed., Vol. 3, p. 2288, par. 1133, and cases cited.

In the case of Western Union Telegraph Company v. Trapp (C.C.A. 8th Ct.), 186 F. 114, a case involving the assessment of the appellant's property for taxation in the State of Oklahoma for the year 1908, the Court held that where it affirmatively appeared that the complainant had notice and appeared before the board of assessors, and was heard in relation to the assessment of its property made pursuant to Revenue Act. Okl. April 17, 1908 (Laws 1907-08, p. 633), the fact that no formal notice was served because the statute fixed an impossible date for the meeting of the board of assessors for the year 1908 did not render the assessment invalid as taking of complainant's property without due process of law. The Court in its opinion in that case said: The object and purpose of a notice is that the taxpayer may have an opportunity to appear before the board, and be heard in relation to his assessment. If, however, as appears affirmatively by the record in this case, the complainant had notice and appeared before the board and was heard in relation to the assessment of its property, the mere fact that a formal notice was not served upon it would not render the proceeding void."

In the case of Cudahay v. Wisconsin Tax Commission, 226 Wis. 317, 276 N.W. 748, the Court held that a taxpayer, appearing before the income tax board of review, entering into stipulation of facts relating to the merits of a proposed additional assessment, making full and complete disclosure and given full hearing on all issues within the statutory period for making additional assess-

ments after the enactment of the statute providing that such assessment shall be deemed made within such period, if notice thereof was given taxpayer while the original assessments were open to adjustment, could not be heard to say that he did not have the prescribed notice, which extended the time for the completion of such assessments by placing them on the assessment roll.

In view of what has been said above, we think that it was immaterial whether notice of the additional assessment in this case was given to the appellant by registered mail, as provided by the statute, or whether the appellant learned of the additional assessment in some other way. The appellant had notice of the assessment and requested a hearing, which was granted by the commissioner. The appellant's representatives appeared before the commissioner and presented additional information relating to its tax liability, which was accepted by the commissioner, and the amount of the tax was reduced. Under these circumstances the mere fact that a formal notice of the assessment was not given to the appellant by registered mail did not affect the validity of the assessment.

It is argued, however, that the jeopardy warrant itself was void for the reason that no notice of the assessment was given to the taxpayer and no opportunity was allowed for a hearing before the commission prior to the issuance of the warrant, and that the issuance of the warrant without notice and an opportunity to be heard constituted a violation of the due process clause of the State and Federal constitutions. But neither the statute nor the due process clauses of the State and Federal constitutions require the giving of notice and an opportunity to be heard before the issuance of a jeopardy warrant:

"Laws providing summary remedies for the collection of delinquent taxes are not open to constitutional objection because they dispense with some

of the formalities of ordinary judicial procedure, or cut off technical defenses, or authorize the seizure of property first and a hearing afterward, provided only that the taxpayer is given an opportunity, at some stage of the proceedings and before his rights are finally cut off, to contest the validity of the tax or his liability with respect to it; * * *'' 61 C.J., p. 1044, Taxation, par. 1360 b, and cases cited.

██ █ As to the effect of the due process requirements of the State and Federal constitutions on the right of the taxpayer to notice and an opportunity to be heard on the question as to the validity of the tax and the amount thereof, the rule is stated in 51 Am. Jur. p. 673, Taxation, par. 732, as follows:

''In matters of taxation, due process requires that after such notice as may be appropriate, the taxpayer has opportunity to be heard as to the validity of the tax and the amount thereof, but it does not demand opportunity for judicial review prior to the inauguration of efforts to collect a tax, or an opportunity for hearing upon each successive step in the tax proceedings. The due process requirement is satisfied if there is opportunity to question the validity or amount of a tax either before the amount is determined or in subsequent proceedings for its collection and enforcement. * * *

██ █ ''Notice of the assessment and opportunity to contest it, therefore, need not be given in advance of the assessment; nor is it essential that the taxpayer have an opportunity to be present before the tribunal by which the tax against him was assessed at the time that the assessment was made, if he has an opportunity to be heard before it has become conclusively established against him. Due process of law may be satisfied if the taxpayer has the right to recover in an action at law any portion of a tax which he thinks has been illegally collected. * * *.''

In Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 75 Law Ed. 1289, 51 S. Ct., 608, the Court held that where only property rights are involved, mere postponement of judicial inquiry into liability is not a denial of due process if the opportunity given for the ultimate judicial determination of the liability is adequate.

In that case the Court had under consideration Section 280 (a) (1) of the Internal Revenue Code. It was contended that the summary procedure permitted by the section violated the constitution because it did not provide for a judicial determination of the transferee's liability for the tax at the outset. But the Court in its opinion said:

"The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. * * *.

"Where only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Springer v. United States, 102 U.S. 586, 593, 26 L. Ed. 253, 256; Scottish Union & Nat. Ins. Co. v. Bowland, 196 U.S. 611, 631, 49 L. Ed. 619, 627, 25 S. Ct. 345. Delay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied. * * *."

██ ██ After a careful examination of the record in this case, we think it is clear that there was no denial of due process in the proceedings for the assessment or the collection of the tax or in the issuance of the jeopardy warrant. The appellant, as we have already stated, had notice of the assessment and an opportunity to be heard before the commissioner. The appellant's representa-

tive appeared before the commissioner and presented additional evidence relative to its tax liability and obtained a reduction in the amount of the assessment. The appellant had a right under Sections 10123, 10124, Code of 1942, to apply to the Tax Commission for a hearing, but the appellant did not elect to exercise that right.

Section 10123, 10124 provides that any person improperly charged with any tax imposed by the act, and required to pay the same, may recover the amount paid together with interest in any proper action or suit against the commissioner. The issue which the court had to decide was whether the plaintiff's evidence was sufficient to show that the plaintiff had been improperly charged with the tax sought to be recovered.

■■ The rule is that mere irregularities or informalities in the assessment, not affecting the substantial justice of the tax, will not warrant recovery. 84 C.J.S. p. 1273, Taxation, par. 634, and cases cited.

■■ "A suit will not therefore lie to recover back taxes paid, when the only complaint that can be made of them is that the proceedings in their levy, assessment or collection have been irregular. The fact of irregularity does not establish injustice; there must be something further in the case which either exempts the party from the tax altogether, or which because of illegality or inequality, deprived the officers of jurisdiction." Cooley on Taxation, Fourth Ed., Vol. 3, p. 2558, par. 1281.

■■ An action to recover taxes already paid is equitable in its function. Stone v. White, 301 U.S. 532, 81 L. Ed. 1265, 57 S. Ct. 851. A taxpayer seeking a refund of a tax paid may recover only if he can show that in common justice it ought not to be retained. Schmidlapp v. Commissioner of Internal Revenue (C.C.A. 2d), 96 F. 2d 680, 118 A.L.R. 297; Crossett Lumber Co. v. United States (C.C.A. 8th), 87 F. 2d 930, 109 A.L.R. 1348.

In Newport Co. v. Tax Commission, 219 Wis. 293, 261 N.W. 884, 100 A.L.R. 1204, writ of certiorari denied in 297 U.S. 720, 80 L. Ed. 1014, 56 S. Ct. 598, the Court held that a taxpayer claiming a right to a refund based upon an additional assessment must establish his right as defensive matter tending to show that no additional tax should be assessed, or that the additional tax claimed to be due by reason of new discoveries upon the audit should be reduced by the amount claimed as a refund. In Routzahn v. Brown, 95 F. 2d 766, the Court held that the taxpayer has the burden to show that he has overpaid taxes legally due, and if not, the government may retain payments already received when they do not exceed the amount which might have been properly assessed. See also Otis Elevator Co. v. United States, 36 F. Supp. 328; Lewis v. Reynolds (C.C.A. 10th) 48 F. 2d 515. Affirmed 284 U.S. 281, 76 L. Ed. 293, 52 S. Ct. 145.

■■ We are not called upon to decide here whether a sale of the appellant's property by the sheriff under the jeopardy warrant to satisfy the demand for payment of the tax would have been valid or whether the assessment itself would have been conclusive upon the taxpayer, if it had been clearly shown that no notice of the assessment had been given to the taxpayer and the taxpayer had not waived such notice. It is only necessary that we consider the validity of the assessment upon which the taxes were paid, and we hold that the assessment was valid. If the tax was valid and constituted a lien upon the appellant's property, the fact that the tax was paid under protest gives the appellant no right of recovery. Neither the lien of the tax nor the appellant's obligation to pay it ceased by reason of any defect in the issuance of the jeopardy warrant to enforce its payment. Phelan v. San Francisco, 120 Cal. 1, 52 p. 38.

Two other points are argued by the appellant's attorneys as ground for reversal on this appeal. But neither of those points calls for an extended discussion.

██ ██ First, it is argued that the tax imposed upon the appellant under the contractor's section of the sales tax statute (Section 10110, Code of 1942) constituted a direct burden upon interstate commerce, and was therefore violative of the commerce clause of the Federal constitution. But we think there is no merit in this contention. The work which the appellant was engaged in performing for the pipe line companies was new construction work. Smith testified that the pipe line companies furnished the rights of way and the pipe and that Anderson Brothers furnished the labor and equipment and dug the ditches and laid the pipe. The pipe lines which the appellant was engaged in constructing had not yet become instrumentalities of interstate commerce, and the work which the appellant performed bore no direct relation to interstate transportation.

In New York Central R. Co. v. White 243 U.S. 188, 61 L. Ed. 667, 37 S. Ct. 247, L.R.A. 1917 D 1, Ann. Cas. 1917 D, 629 the Court held that a night watchman in the employ of a railroad company, injured while in the performance of his duty to guard tools and materials intended to be used in the construction of a new railway station and new tracks, was not then engaged in interstate commerce, within the meaning of Federal Employer's Liability Act of April 22, 1908, although such station and tracks were designed for use, when finished, in interstate commerce. The Court in its opinion in that case said:

"The admitted fact that the new station and tracks were designed for use, when finished, in interstate commerce, does not bring the case within the Federal act. The test is, 'was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?' Shanks v. Delaware, L. & W. R. Co. 239, U.S. 556, 558, 60 L. Ed. 436, 438, L.R.A. 1916 C, 797, 36 Sup. Ct. Rep. 188. Decedent's work bore no direct relation

to interstate transportation, had to do solely with construction work, which is clearly distinguishable, as was pointed out in Pedersen v. Delaware, L. & W. R. Co. 229, U.S. 146, 152, 57 L. Ed. 1125, 1128, 33 Sup. Ct. Rep. 646, Ann. Cas. 1914C, 153, 3 N.C.C.A. 779.'' See also Raymond v. Chicago, M. & St. P. R. Co., 243 U.S. 43, 61 L. Ed. 583, 37 S. Ct. 268; General Railway Signal Company v. Virginia Ex Rel. Corp. Com., 246 U.S. 500, 62 L. Ed. 854, 38 S. Ct. 360; Sullivan v. Booth & Flinn, 206 N.Y.S. 360, 210 App. Div. 347; Jackson v. Chicago M. & St. P. Ry. Co., 210 F. 495.

The appellant cites in support of its contention that the laying of the pipe lines by the appellant was interstate commerce J. F. Fitzgerald Construction Co. v. Pedersen, 324 U.S. 720, 89 L. Ed. 1316, 65 S. Ct. 892, in which the Court had under consideration the application of the Federal Fair Labor Standards Act in a suit by an employee against the employer to recover overtime compensation and liquidated damages for an alleged violation of the act. But that case is not in point here. The work in which the employee was engaged in that case was repair work. The difference between contracts for the construction of new instrumentalities which are to be used by carriers of interstate commerce, after completion, and contracts for the repair of existing instrumentalities which are being used in interstate commerce is clearly stated in Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 57 L. Ed. 1125, 33 S. Ct. 648, Ann. Cas. 1914C 153, and New York C.R. Co. v. White, supra; and in the very recent case of Gulf M. & N. R. Co. v. Madden, 190 Miss. 374, 200 So. 119, in which this Court held that employees engaged in original construction of road beds or tracks for a railroad company to be used in interstate commerce were not engaged in "interstate commerce" within the Federal Employer's Liability Act, but those employed in the repair or maintenance of interstate railroad tracks were within the act.

██ ██ Finally, it is argued that the court erred in holding that the appellant was liable for the tax on that part of the work performed by the subcontractor. But we think it is clear from the language used in the 1944 amendment to Section 10110, Code of 1942, (Section 3, Chapter 129, Laws of 1944), that the tax imposed in that section is imposed directly upon the prime contractor, who is liable for the payment of the tax even though parts of the work may be performed by subcontractors, and there was no error in the action of the trial judge in rejecting the appellant's claim that the appellant was not liable for the tax on that part of the work performed by the subcontractor.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.

All justices concur.